```
UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
---------------------------------------------------------------x
In re: Application of OWL SHIPPING LLC &        :
ORIOLE SHIPPING LLC for an Order Pursuant       :
to 28 U.S.C. § 1782 to Conduct Discovery for    :
for Use in Foreign Proceedings                  :        No. _____
---------------------------------------------------------------x
```

## MEMORANDUM OF LAW IN SUPPORT OF EX PARTE
## APPLICATION TO CONDUCT DISCOVERY PURSUANT TO 28 U.S.C. § 1782

Applicants, Owl Shipping, LLC and Oriole Shipping, LLC, through their attorneys, Tisdale Law Offices, LLC, submit this Memorandum of Law in Support of their Application to Conduct Discovery Pursuant to 28 U.S.C § 1782.  As will be discussed further herein, Applicants meet the statutory requirements to obtain discovery under 28 U.S.C. § 1782 and the discretionary factors weigh heavily in favor of granting the Application.  Further, the majority of courts hold that 28 U.S.C. § 1782 can be used to obtain discovery for use in foreign arbitration proceedings since arbitrations are "proceedings" within the meaning of the statute.  Therefore, this Court should grant the Application and permit service of the proposed subpoenas attached as Exhibit 1 to the Application.

## BRIEF FACTUAL BACKGROUND

A detailed recitation of the factual circumstances which give rise to this Application can be found in the accompanying Declaration of Sally-Ann Underhill, English Solicitor for Owl and Oriole.  For the purposes of this Memorandum of Law, Applicants set forth a short summary of the facts for convenience with cross-references to the Underhill Declaration.

Owl Shipping LLC ("Owl") and Oriole Shipping LLC ("Oriole") are the owners of the vessels, the M/V Owl and the M/V Oriole, respectively.  (Underhill Decl. ¶ 3).  Dalian Suntime International Transportation Company Limited ("Dalian") or ("Charterers") time-chartered the vessels Owl and Oriole from Applicants.  (Underhill Decl. ¶¶4, 9,10).   The Owl was delivered to

Dalian on June 19, 2014 in accordance with the charter party. (Underhill Decl. ¶ 13). Despite receiving invoices and notices pursuant to the agreement, Dalian failed to pay hire and pay for the bunkers as required by the charter party. (Underhill Decl. ¶¶ 15- 18). As a consequence of this breach, Owl was forced to terminate the charter party and withdraw the vessel. (Underhill Decl. ¶ 18). There remains a total outstanding amount due under the Owl charter party of $1,546,336.00. (Underhill Decl. ¶ 40).

As to the Oriole charter party, the Oriole was delivered to Dalian on June 15, 2014. (Underhill Decl. ¶ 19). Despite receiving invoices and notices pursuant to the agreement, Dalian failed to pay the invoices as required by the charter party. (Underhill Decl. ¶¶ 23-35). Some partial payment was made, but there remains a total outstanding amount due under the Oriole charter party in the amount of $1,166,915.11. (Underhill Decl. ¶ 40).

The charter parties for both the Owl and Oriole contained virtually identical terms. (Underhill Decl. ¶¶ 11, 12). Clause 45 of both charter parties calls for arbitration of all disputes arising out of the contract in London under English law. (Underhill. Decl. ¶ 12). True and accurate copies of the notices of arbitration served on Dalian with respect to both the Oriole and Owl charter parties are attached to the Underhill Declaration as **Exhibit 1**.

As Applicants Owl and Oriole pursue their London Arbitration proceedings against Dalian, they will require documents and evidence to substantiate their claims. One of the issues to be decided by the LMAA proceedings will be whether Dalian entered the charterparties in bad faith with full knowledge that it did not possess sufficient funds to make the payments under the agreements. (Underhill Decl. ¶ 44-46). A previous meeting with the New Jersey general manager of Suntime America, Inc. (an entity purportedly affiliated with Dalian) revealed that Ms. Magic Sun possesses knowledge and documents which relate to Dalian's financial abilities,

2

corporate structure, and asset structure. (Underhill Decl. ¶ 36). Suntime America, Inc. has a place of business in South River, NJ. *See* Exhibit 3 to the Underhill Declaration. Dalian Suntime International Transportation (USA) Inc. has a place of business in East Brunswick, NJ. *See* Exhibit 3 to the Underhill Declaration. Ms. Magic Sun, Suntime America, Inc., and Dalian Suntime International Transportation (USA) Inc. are persons or entities within this judicial district who are believed to possess information and documents which directly relate to the issues to be arbitrated in England before the London Maritime Arbitrators Association ("LMAA") by Owl and Oriole. (Underhill Decl. ¶ 48). Without an order from this Court permitting Applicants Owl and Oriole to serve the proposed subpoenas on these three entities, Applicants will be forced to pursue their claims without this crucial evidence. (Underhill Decl. ¶ 49).

## DISCUSSION

I.   **Legal Requirements for Obtaining Relief Pursuant to 28 U.S.C. § 1782**

28 U.S.C. § 1782(a) prescribes in relevant part as follows:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . . The order may be made . . . upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced before a person appointed by the court.

The purpose of Section 1782 is to provide federal-court judicial assistance in obtaining evidence for use in a proceeding in a foreign or international tribunal. *Intel Corp.* v. *Advanced Micro Devices, Inc.,* 542 U.S. 241, 262 (2004); *In re Mesa Power Group,* LLC, 11-MC-270, 2013 U.S. Dist. LEXIS 67091; 2013 WL 1890222 (D.N.J. April 19, 2013).

3

On an application for discovery pursuant to 28 U.S.C. § 1782, this Court must determine whether the applicant has made a prima facie showing of three threshold statutory requirements: (l) that the person or entity from whom discovery is sought resides or is found in the district where the petition is made; (2) that the applicant is seeking testimony or documents for use in a proceeding in a "foreign or international tribunal;" and (3) that the applicant is an "interested person" with respect to the underlying proceeding. *In re Bayer AG,* 146 F.3d 188, 193 (3d Cir. 1998); *In re Mesa Power,* 2013 U.S. Dist. LEXIS 67091, *7-8.

Once the aforementioned requirements are met, the Supreme Court has delineated four additional discretionary factors that a district court must consider in evaluating whether to exercise its discretion in favor of the application for discovery, namely whether: (a) the person from whom discovery is sought is a participant in the foreign proceedings; (b) the foreign tribunal would be receptive to the U.S. discovery obtained via Section 1782; (c) the application conceals an attempt to circumvent foreign proof-gathering restrictions; and (d) the request is unduly intrusive or burdensome. *Intel,* 542 U.S. at 264-65.

As will be discussed further herein, Applicants Owl and Oriole have met both the statutory requirements and have demonstrated that the discretionary factors weigh heavily in their favor.

## II.     Applicants Owl and Oriole Have Demonstrated the Statutory Requirements

### A.     The Party From Whom Discovery Is Sought Is Found In This District

Respondents Dalian Suntime International Transportation (USA) Inc., Suntime America, Inc., and Magic Sun[1] are all located within this judicial district. Dalian Suntime International

---

[1] Magic Sun is believed to be an individual residing in this district who serves in a managerial capacity for the Dalian group of entities and represents both American Suntime and Dalian Suntime International Transportation (USA) Inc.

4

Transportation (USA) Inc. is registered to do business in the State of New Jersey and has an office in East Brunswick. Suntime America, Inc. maintains a place of business in South River, NJ. Ms. Magic Sun is believed to be the representative of both of these entities. *See* Underhill Decl. ¶ 36.

### B. The Discovery Sought Is For Use in A Foreign Tribunal

Owl and Oriole have commenced arbitration in accordance with the Rules of the LMAA. As Ms. Underhill attests, Owl and Oriole have now appointed their respective arbitrator. (Underhill Decl. ¶ 37). As Ms. Underhill observes, the London Tribunal will act as a first instance tribunal that will: (a) decide the parties' dispute on the merits; (b) permit the gathering and submission of evidence by the parties; and (c) ultimately issue an award that will be binding on the parties and subject to judicial review. (Underhill Decl. ¶¶ 50- 54).

The Eleventh Circuit and several federal district courts have held that a private, commercial arbitral panel is a "tribunal" within the ambit of Section *1782. See e.g. In re Consorcio Ecuatoriano de Telecomunicaciones S.A.,* 685 F.3d 987 (11th Cir. 2012), superseded on other grds by, 747 F.3d 1262 (11th Cir. 2014)*; In re Roz Trading Ltd.,* 469 F. Supp. 2d 1221 (N.D.Ga. 2006); *In re Babcock Borsig AG,* 583 F. Supp. 2d 233 (D.Mass. 2008). In fact, one court has squarely held that discovery in aid of an LMAA proceeding is proper under 1782. *In re: Application of Winning (HK) Shipping Co. Ltd*., 2010 U.S. Dist. LEXIS 54290, at *14; 2010 WL 1796579; 2010 AMC 1761 (S.D. Fla. Apr. 30, 2010). In that case, the court held that an LMAA proceeding falls within the scope of 1782 and that discovery in aid of an LMAA proceeding may be obtained. Specifically, the court reasoned that because LMAA arbitration decisions are subject to review under English law, that the arbitration was a "foreign tribunal"

5

within the meaning of 1782 and therefore granted judicial assistance. This case is indistinguishable from the case at bar. *See* (Underhill Decl. ¶¶ 53- 54).

One district court within this Circuit has also held that a private arbitration panel authorized by the laws of the United Kingdom and Kazakhstan was a tribunal within the meaning of 1782. *In re: Oxus Gold PLC*, 2007 U.S. Dist. LEXIS 24061; 2007 WL 1037387 (D. N.J. Apr. 2 , 2007). In another case from within this Circuit, the court stated: "[i]n fact, the Supreme Court's decision in *Intel* (and post- *Intel* decisions from other district courts) indicate that *Section 1782* does indeed apply to private foreign arbitrations." *Comision Ejecutiva v. Nejapa power Co. LLC*, 2008 U.S. Dist. LEXIS 90291, at *3; 2008 WL 4809035 (D. Del. Oct. 14, 2008). These two district court decisions from within the Third Circuit are persuasive here and counsel in favor of granting Section 1782 relief.[2]

As pointed out by the *Consorcio Ecuatoriano* Court, the seminal case on this issue is the Supreme Court's decision in *Intel* which was handed down after *National Broadcasting* and *Biedermann* were decided. *Consorcio Ecuatoriano*, 685 F.3d at 995. In *Intel,* the Supreme Court was called to determine whether the Commission of the European Communities (the "Commission") was a "tribunal" for purposes of Section 1782. To answer the question, the Supreme Court applied a functional approach and examined the nature and characteristics of the Commission's activities with respect to the matters that it decides to investigate and adjudicate. The Supreme Court noted that the Commission acted as "a first-instance decisionmaker," took into account "information provided by a complainant" as well as gathered evidence directly from the "target" of the complaint. 542 U.S. at 254-55. In addition, the Court determined that the

---

[2] By contrast, the Second and Fifth Circuits have ruled that Section 1782 aid is unavailable in private international arbitrations. *National Broadcasting Co., Inc.* v. *Bear Stearns & Co., Inc.,* 165 F.3d 184 (2d Cir. 1999); *Republic of Kazakhstan* v. *Biedermann Int'l,* 168 F.3d 880 (5th Cir. 1999). However, post-*Intel* decisions cast serious doubt on these holdings, as discussed herein.

Commission, as a decision-maker could dismiss the complaint or find infringement of European Community laws and impose penalties against the infringer (or target of the complaint) following an investigation. *Id.* at 255. The Supreme Court also found that the "Commission's final action dismissing the complaint or holding the target liable is subject to review in the Court of First Instance and the European Court of Justice." *Id.* Accordingly, the Supreme Court went on to rule that the Commission was a tribunal for purposes of the statute:

> The language of § 1782(a), confirmed by its context, our examination satisfies us, warrants this conclusion: The statute authorizes, but does not require, a federal district court to provide assistance to a complainant in a European Commission proceeding that leads to a dispositive ruling, *i.e.* a final administrative action both responsive to the complaint and reviewable in court.

*Intel*, 542 U.S. at 255

While in *Intel* the Supreme Court did not directly tackle the issue of whether Section 1782 aid was available to litigants in private international arbitrations, the Eleventh Circuit has reasoned that the Court's broad functional construction of the term tribunal strongly supports the view that private arbitral bodies fall within the statute. *Consorcio Ecuatoriano,* 685 F.3d at 995. Thus, the dispositive analysis is not whether the tribunal is characterized as "private" or "governmental," but rather, "whether the arbitral panel acts as first-instance adjudicative decision maker, whether it permits the gathering and submission of evidence, whether it has authority to determine liability and impose penalties, and whether its decision is subject to judicial review." *Id.; see also In re Roz Trading,* 469 F. Supp. 2d at 1228 ("Where a body makes adjudicative decisions responsive to a complaint and reviewable in court, it falls within the widely accepted definition of 'tribunal,' the reasoning of *Intel*, and the scope of § 1782(a)"); *see (*Underhill Decl. ¶¶ 50-54). The Eleventh Circuit's reasoning is further supported by the fact that the *Intel* Court explicitly rejected the notion that "categorical limitations" should be imposed on the statute's

7

reach. *Intel,* 542 U.S. at 255. Moreover, the *Intel* Court explained that Congress in 1964, in amending the statute to broaden its scope, replaced the term "judicial proceeding" with the term "tribunal." *Intel*, 542 U.S. at 258.  As such, *Biedermann* and *NBC* have been seriously undermined.  In any event, this Court is not bound by decisions of the Second or Fifth Circuits.

In discussing the meaning of the term "tribunal" under Section 1782, the Court approvingly quoted the definition of the term given by Professor Hans Smit, who had been "the dominant drafter of, and commentator on" the 1964 revisions to the statute. *In re Letter of Request from Crown Prosecution Service,* 870 F.2d 686,689 (D.C. Cir. 1989). In Prof. Smit's view, the term "tribunal" was meant to include "investigating magistrates, administrative and arbitral tribunals, and quasi-judicial agencies, as well as conventional civil, commercial, criminal, and administrative courts." *Intel,* 542 U.S. at 258. Prof. Smit has further commented on the 1964 amendments:

> [T]he present version of Section 1782 provides for assistance for use in "a foreign or international tribunal." The substitution of the word "tribunal" for "court" was deliberate, for the drafters wanted to make the assistance provided for available to all bodies with adjudicatory functions. Clearly, private arbitral tribunals come within the terms the drafters used . . . . Indeed, the broad term "international tribunal" was intended to cover all international arbitral tribunals:

AMERICAN ASSISTANCE TO LITIGATION IN FOREIGN AND INTERNATIONAL TRIBUNALS: SECTION 1782 OF TITLE 28 OF THE U.S.C. REVISITED, 25 SYRACUSE J. INT'L & COM., 1, 5 (Spring 1998).

Prof. Smit has also criticized court decisions that have narrowly interpreted the term tribunal to exclude "private" arbitral tribunals as "most regrettable" since "[t]hey run counter not only to the plain meaning of the term, to Section's 1782 legislative history, and to the clear purpose of that Section to facilitate evidence gathering in foreign and international adjudication." *Id.* at 6.

In light of the foregoing legal authorities and considerations, Applicants Owl and Oriole respectfully request that this Court follow the Eleventh Circuit and the federal district courts within this Circuit that have held and reasoned that a private arbitral tribunal is a "tribunal" within the scope of Section 1782. Here, as Ms. Underhill attests, the London Tribunal which will hear the parties' claims and defenses: (a) will be a first-instance adjudicative decision-maker; (b) will permit the parties to gather and present evidence in support of their claims or defenses; and (c) will render a binding ruling on liability and award damages. (Underhill Decl., ¶¶ 50-54). In addition, any award issued by the LMAA Tribunal will be subject to judicial review. (Underhill Decl. ¶ 53). The LMAA Tribunal, therefore, satisfies the functional requisites to be deemed a "tribunal" within the purview of Section 1782.

      **C.**    **Applicants are "Interested Persons" In The Foreign Proceeding Within the Meaning of Section 1782.**

The Supreme Court has acknowledged that the term "interested person" should be interpreted broadly and includes both litigants as well as other parties who possess a reasonable interest in obtaining judicial assistance. *Intel*, 542 U.S. at 256-57. Applicants, as parties to the arbitration proceeding before the London Tribunal are "interested persons" within the purview of the statute. *Id.* at 256 ("No doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782"); (Underhill Decl. ¶ 37).

**III.**    **The Four Discretionary Factors Favor Granting the Application**

      **A.**    **Ms. Magic Sun, Suntime America, Inc., and Dalian Suntime International Transportation (USA) Inc. are not Parties to the Proceeding**

Respondents are not parties in the London arbitration. The party to the LMAA proceeding is Dalian Suntime International Transportation Company Limited. (Underhill Decl. ¶ 4). As Ms. Underhill attests, the London Tribunal is not empowered to issue witness subpoenas

9

and cannot otherwise compel witnesses to give evidence or attend a hearing. (Underhill Decl. ¶ 54). Ms. Magic Sun has already represented that she possesses information regarding the financial ability, profits, and commercial transactions of Dalian. (Underhill Decl. ¶ 36). However, absent an order from this Court permitting Applicants to serve a subpoena seeking documents and conduct a deposition of Ms. Sun, Applicants will be unable to obtain any useful information or evidence which she admittedly possesses but has not provided to date.

The Respondents, who reside or conduct business in the State of New Jersey, are outside the reach of the English Court's jurisdiction. The English Court would thus be unable to compel them to appear and provide evidence in the London arbitration. (Underhill Decl. ¶ 54). The Supreme Court has observed that the need for Section 1782 assistance is of particular importance when the person from whom discovery is sought is a non-party in the underlying foreign proceeding: "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Intel,* 542 U.S. at 264. Applicants respectfully submit that Section 1782 relief is crucial to Applicants' ability to obtain the requested testimony from the Respondents, all of whom are located in New Jersey. (Underhill Decl. ¶¶ 48, 49).

**B.     The London Tribunal Will Be Receptive To The Requested Discovery**

As the Supreme Court has stated, the second discretionary factor considers "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal court judicial assistance." *Intel,* 542 U.S. at 264. As the Third Circuit has held, the burden of demonstrating that the foreign tribunal would be unreceptive to the evidence rests with the party opposing the application. *In re*

*Bayer,* 146 F.3d at 196. Indeed, courts have been reluctant to deny Section 1782 assistance absent authoritative proof that the foreign tribunal would reject the evidence sought. *In re Euromepa S.A.,* 51 F.2d 1095 (2d Cir. 1995). There, the Second Circuit rejected the analytical approach the district court adopted to determine the French tribunal's "attitude" to the discovery obtained in the U.S. via Section 1782. In the Second Circuit's view, such an approach resulted in an unnecessary and extensive analysis of French law (based on equivocal declarations from "experts" on French law) as to whether such discovery would offend the French court:

> [W]e believe that a district court's inquiry into the discoverability of requested material should consider only authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782. Such proof, as embodied in a forum county's judicial, executive or legislative declarations that specifically address the use of evidence gathered under foreign procedures, would provide helpful and appropriate guidance to a district court in the exercise of its discretion. Absent this type of clear directive, however, a district court's ruling should be informed by section 1782's overarching interest in "providing equitable and efficacious procedures for the benefit of tribunals and litigants involved in litigations with international aspects."

*In re Euromepa,* 51 F.3d at 1100. *See also In re Bayer AG,* 146 F.3d at 196 ("Inasmuch as relevant evidence is presumptively discoverable under § 1782, the burden of demonstrating offense to the foreign jurisdiction, or any other facts warranting the denial of a particular application, should rest with the party opposing the application ... ").

While the London Tribunal has discretion to accept evidence that is submitted to it, there is no reason to suspect that the Tribunal would not be receptive to the testimony of Ms. Sun or any other representative of Dalian or Suntime America, Inc. with respect to the financial ability of Dalian and other commercial relationships, which information will be crucial to the Tribunal's adjudication of liability on the merits. *In re Gemeinschaftspraxis Dr. Med Schottdorf,* No. M-19-

88, 2006 U.S. Dist. LEXIS 94161, 25-26 (S.D.N.Y. Jan. 4, 2007) (applicant need only have "a good faith belief that it will be able to use the [Section 1782] evidence in the Social Court Action"). Accordingly, this factor also favors the granting of the application. In fact, English courts have accepted evidence obtained under Section 1782 in the past. (Underhill Decl. ¶ 55).

      C.    **This Application Is Not An Attempt To Circumvent Proof-Gathering Restrictions In England**

The third discretionary factor for the Court to consider is whether the Applicants are seeking to circumvent foreign proof-gathering restrictions by their application. This factor requires the Court to evaluate not whether the foreign tribunal's discovery rules provide a means to access the requested information but rather whether the party intends to use Section 1782 to avoid explicit foreign restrictions. As demonstrated by the Underhill Declaration, Applicants are not attempting to end-run English proof-gathering restrictions or policies. (Underhill Decl. ¶¶ 54-55).

Moreover, the English House of Lords has previously approved the use of Section 1782 as a proper vehicle to obtain evidence without offending English law. (Underhill Decl. ¶ 55); *South Carolina Ins. Co.* v. *Assurantie Maatschappij "De Zeven Provincien" N V* [1987] 1 App. Cas. 24 (1986)(a copy of which is attached to the Underhill Declaration). The U.S. Supreme Court and the Third Circuit have approvingly cited the House of Lord's *South Carolina Ins.* opinion as proof that, even in jurisdictions where pre-trial discovery is limited and not as expansive as in the United States, Section 1782 discovery would not offend English laws or procedures. *Intel,* 542 U.S. at 261-62; *In re Bayer AG,* 146 F.3d at 194-195. Thus, English courts are accepting of Section 1782 assistance from US courts.

In the *South Carolina Ins.* case, one of the litigants in a re-insurance lawsuit sought Section 1782 discovery from non-parties located in the Western District of Washington. *In re*

*Bayer AG,* 146 F.3d at 194. The English Commercial Court enjoined the parties from pursuing the Section 1782 application, since such a procedure, in the Court's view, interfered with the English Court's right "to retain the control of its own procedure and the proceedings that are before it." *Id.* The House of Lords overturned the lower court's decision on appeal, ruling that, despite the inability of the English Court to compel discovery, Section 1782 did not interfere with the Court's control of its own process and that discovery obtained pursuant to Section 1782 discovery would not be offensive to English jurisdiction. *Id.* at 194-195. *See also Intel,* 542 U.S. at 261-62 ("House of Lords ruled that nondiscoverability under English law did not stand in the way of a litigant in English proceedings seeking assistance in the United States under § 1782"). These explicit recognitions by the English House of Lords, the U.S. Supreme Court, and the Third Circuit Court of Appeals are highly persuasive with regard to the second and third discretionary *Intel* factors and counsel that they both weigh in favor of Applicants Owl and Oriole.

The application in no way constitutes a vehicle to end-run English discovery rules or violate English law, public policy or proof-gathering restrictions. The application is a good-faith attempt to acquire highly relevant evidence that Applicants will need to prepare their case in the London arbitration proceedings. *In re Bayer AG,* 146 F.3d at 194-195 (The House of Lords "held that parties to an English litigation were entitled to prepare their case by obtaining documents in a foreign country and this included the right to seek discovery under § 1782"). Accordingly, this factor weighs in favor of the Court granting the requested discovery.

        **D.**    **The Discovery Request Is Not Unduly Intrusive or Burdensome**

The fourth and final discretionary factor requires the Court to consider whether the discovery sought is intrusive or imposes an undue burden on the parties from whom testimony is

sought. *Intel,* 542 U.S. at 265. The evidence being sought from the respondents is directly relevant to the LMAA proceedings and will be used in the prosecution of Owl and Orioles' cases against Dalian on the issues of entering into the charter parties without the ability to satisfy their end of the bargain and the assets / corporate structure of the Dalian group of entities which bears on that same issue. Hence, the Applicants' requested discovery is not unduly intrusive or burdensome and is narrowly tailored to obtain information which Ms. Magic Sun already indicated she possesses within this judicial district.

## CONCLUSION

Applicants Owl and Oriole have satisfied the three statutory requirements under 28 U.S.C. § 1782 for obtaining discovery in aid of foreign proceedings. As established by the Declaration of Sally-Ann Underhill and supporting exhibits thereto, the discretionary factors weigh heavily in support of granting the requested relief. The LMAA proceedings have been commenced and evidence in the form of documents and testimony from the New Jersey affiliate of Dalian Suntime is needed. Ms. Magic Sun possesses evidence which is vital to establishing Owl and Oriole's substantive claims in the London proceedings. Therefore, this Court should enter an order granting the Ex Parte Application, permitting Owl and Oriole to serve the subpoenas attached to the Application as Exhibit 1.

Dated: September 10, 2014　　　　　　　　By:　　　　/s/Timothy J. Nast　　　　
　　　　　　　　　　　　　　　　　　　　　　　Timothy J. Nast
　　　　　　　　　　　　　　　　　　　　　　　Tisdale Law Offices, LLC
　　　　　　　　　　　　　　　　　　　　　　　60 East 42nd Street Ste. 1638
　　　　　　　　　　　　　　　　　　　　　　　New York, NY 10165
　　　　　　　　　　　　　　　　　　　　　　　Tel: 212-354-0025
　　　　　　　　　　　　　　　　　　　　　　　Fax: 212-869-0067
　　　　　　　　　　　　　　　　　　　　　　　tnast@tisdale-law.com